## BLAISDELL et al. vs. BOHR et al.

A widow placed certain money in the hands of her son-in-law to pay her husband's debts and invest the balance as he thought proper. He deposited a portion of the money in a bank to the credit of his principal, and having purchased certain shares of railroad stock for her and in her name, drew a check for most of the money so deposited. The bank having required a power of attorney in writing, the principal executed to the agent a power "to attend to any and all descriptions of business in which I may be interested or concerned in a real or personal manner, and to receive for me any sum or sums of money which may be due to me, and to receipt therefor." She testified that these stocks and a house and lot constituted all of her property; and that she notified her son-in-law that he had nothing to do with the house and lot. She deposited the certificates of stock in a tin box, and on leaving the city, left such box and the key to it with her daughter, the wife of her agent. Her son-in-law took the certificates and sold them to various parties:

Held, that the agent had authority to sell such stock, and purchasers from him obtained title thereto.

(a.) Whether or not the transfer of the stock by the railroad company which issued it was irregular for want of a special power of attorney, yet the complainant having come into a court of equity, and the sale of the shares by her agent having conveyed the title to the purchasers, they could compel a transfer to be made by the company; and having already been made, it will be confirmed.

(b.) If one of two innocent parties must suffer by the act of a third party, he who put it in the power of such third party to do the

wrongful act must suffer the loss, rather than the other inno-
cent party who would be a victim without any fault on his part.

November 23, 1886.

Principal and Agent. Stock and Stockholders. Fraud.
Equity. Before Judge RONEY. Richmond Superior Court.
April Term, 1886.

This case arose from a bill filed by Christine Bohr
against the Georgia Railroad and Banking Company et al.
and cross-bills filed by the defendants. The pleadings
will be found reported in 68 Ga. 56. The case was re-
ferred to a master in chancery, who reported that the
complainant was entitled to recover from the Georgia
Railroad for the value of stock transferred on its books,
as she claimed, illegally, and that Frank Blaisdell and A.
J. Miller were liable to the railroad for the value of twelve
of the shares so transferred. Exceptions were filed, but
on the hearing the report was sustained, and the railroad,
Blaisdell and Miller each excepted. The decision states
the other facts.

FRANK H. MILLER, for Frank Blaisdell et al.

J. B. CUMMING; BRYAN CUMMING, for the Georgia Rail-
road.

WM. K. MILLER, for Andrew J. Miller.

M. P. CARROLL, for Christine Bohr.

BLANDFORD, Justice.

Mrs. Bohr, having received some three thousand dollars
in money on account of the life insurance of her deceased
husband, turned this money over to her son-in-law,
Oscar R. Hummell, to pay her husband's debts and to in-
vest for her as he thought proper. Hummell deposited
twenty-one hundred dollars of this money in the National

Bank of Augusta to the credit of Mrs. Bohr; he purchased twenty-three shares of the stock of the Georgia Railroad and Banking Company for Mrs. Bohr, and in her name drew a check upon the National Bank for nineteen hundred dollars to pay for this stock. The bank required a power of attorney in writing from Mrs. Bohr to Hummell. She executed this power of attorney to Hummell, in which she empowered him " to attend to any and all descriptions of business in which I may be interested or concerned in a real or personal manner, and to receive for me any sum or sums of money which may be due to me, and to receipt therefor."

She afterwards drew a check herself and balanced her account with the bank. She deposited her certificates of stock in a tin box, and when she went to Atlanta, she left this box and the key thereto with her daughter, Hummell's wife. Hummell, with the power of attorney and the certificates of stock in his hands, sold the same to divers persons. And the question arises as to whether Hummell had the right to sell these stocks, and whether the railroad company could make the tranfer of the stocks.

The court below held that the power was insufficient to authorize the sale or transfer of these stocks or shares of Mrs. Bohr. This is excepted by the railroad company, and is the main error assigned here. The power granted in the letter of attorney from Mrs. Bohr to her son-in-law, Hummell, is very broad in itself· " To attend to any and all descriptions of business in which I (she, Mrs. Bohr) may be interested or concerned in a real or personal manner;" and the words, " and to receive for me any sum or sums of money which may be due to me and to receipt therefor," are not a limitation of Hummell's power. "To attend to any and all descriptions of business in which I (she) may be interested or concerned in a real or personal manner." The power granted in this case is broader than the power granted in the case of *City Bank vs. Kent*, 57 *Ga.* 283, and in that case it was held that when an agent, hav-

ing the power to collect a sum of money due the maker from an insurance company and to receipt for the same, and to apply portions of the money to debts of the principal, " and generally to do and perform any other acts in and about said business," deposits in bank to the credit of the principal some of the money arising from the claim mentioned in the power, and afterwards draws out said money on checks purporting to be signed by the principal, believed by the officers of the bank to be genuine, the bank was discharged, whether the checks were genuine or not. We do not have to go so far in this case. Hummell, as agent, purchased the stocks for Mrs. Bohr; he had the possession of the certificates of stock, she had made and delivered to him the warrant of attorney by which he was authorized to attend to any and all descriptions of business in which she was interested or concerned. She testified on the trial that these stocks and a house and lot were all the property which she had, and that she notified Hummell that he had nothing to do with the house and lot, and it is fairly inferable that he was to manage these stocks, it being her only business to which he was to attend.

We think that, in looking at the facts and circumstances, together with this power of attorney, Hummell was authorized to sell the stock of Mrs. Bohr, and that she was bound by this action of her agent, and that the purchasers of this stock acquired a good title to the same.

But Mrs. Bohr contends, and it is ably insisted by her counsel, that the transfer of the stock by the railroad company is void because the rule of the company required special powers of attorney to authorize the transfer of stock, or that the owner must transfer the same in person; and that the special powers of attorney in this case, by which this stock was transfered, were forgeries; and that therefore the railroad company was liable to make good this stock to her. She is in a court of equity, having resorted thereto to hold the company liable to her, and if the

sale of these shares of stock by her agent transferred the title to the same to the purchasers, as we hold it does, the purchasers could, in equity, compel the railroad company to transfer the same to them, and as this has already been done by the company, equity will consider that done which ought to have been done, and will ratify an act already done which it would compel the party to do. Mrs. Bohr trusted Hummell implicitly; she turned the money over to him to purchase these stocks in his discretion; she allowed him to have the possession of the certificates of stock; he drew money out of the bank in her name; she invested him with this general power of attorney; in fact, she held him out to the world as her general agent to do and perform any and all description of business that she was interested or concerned in; and it is a rule that he who trusts most must lose most, and if one of two innocent parties must suffer by the act of a third party, that he who puts it into the power of such third party to do the wrongful act must suffer the loss rather than the other innocent party, who would be a victim without any fault on his part. So we think, in this case, the loss, if any, by the conduct of her agent, Hummell, should fall on her, and not on the railroad company. We are of the opinion that the master in chancery erred in holding that the power of attorney from Mrs. Bohr to Hummell did not authorize the agent to sell the stocks and transfer the titles to the same to the purchasers, and in holding that the Georgia Railroad and Banking Company were liable to her for the transfers of this stock to the purchasers from Hummell, the agent, and that the court erred in concurring with this view. So it follows that the decrees against Blaisdell and Miller are likewise erroneous. It being the opinion of this court that no decree should have been rendered against either or any of the plaintiffs in error, the judgment is reversed in all of these cases.

Judgment reversed.